UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MELISSA JOY HERRBOLDT,<br><br>Defendant. | 4:19-CR-40049-04-KES<br><br><br>ORDER DENYING MOTION FOR RELIEF UNDER THE FIRST STEP ACT |

Defendant, Melissa Joy Herrboldt, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 175. Plaintiff, the United States of America, opposes the motion. Docket 187. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

Herrboldt pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Dockets 85, 90. On January 27, 2020, this court sentenced Herrboldt to 51 months in custody followed by 3 years of supervised release. Docket 133; Docket 134 at 2-3. Herrboldt is eligible for home confinement on April 19, 2023, and her current anticipated release date is September 20, 2023. Docket 177 at 139.

Herrboldt is incarcerated at Federal Correctional Institution (FCI) Waseca, a low-security correctional institution in Waseca, Minnesota. *Id.* at 92; Docket 183 at 1. As of September 24, 2020, there are currently 108 active COVID-19 cases among FCI Waseca's inmates, 3 active COVID-19 cases among

the facility's staff, 102 inmates and 6 staff have recovered from COVID-19, and there are zero deaths from COVID-19. *See BOP: COVID-19 Update*, Fed. Bureau of Prison, https://www.bop.gov/coronavirus/ (last visited on Sept. 24, 2020).

Herrboldt is 25 years old. Docket 177 at 5. Herrboldt's health conditions include cardiac arrhythmia, atrioventricular nodal reentry tachycardia (AVNRT), and Woff-Parkinson-White syndrome (WPW). *Id.* at 1. Herrboldt takes medication to control her cardiac arrhythmia. *Id.* at 1, 8, 30.

On March 30, 2020, Herrboldt submitted a request for compassionate release to the warden, requesting that she be considered for home confinement because of her health and COVID-19. *Id.* at 144. There is no record of the date the warden received her request, but the warden denied the request on April 9, 2020. *Id.* at 145. After her initial request was denied, Herrboldt filed additional requests for home confinement. Docket 175-1 at 12-13. She also filed two appeals, challenging the denial of her requests for home confinement. Docket 177 at 142; Docket 175-1 at 8, 10-11. All her appeals were denied. Docket 175-1 at 7, 9.

On April 3, 2020, Herrboldt filed a pro se motion with the court for relief under the First Step Act. Docket 148. The court denied Herrboldt's motion because Herrboldt did not demonstrate that she exhausted her administrative remedies or submitted a request to the warden before she filed her motion with the court. Docket 151. On August 7, 2020, Herrboldt filed a second pro se motion with the court for relief under the First Step Act. Docket 175. Herrboldt's counsel subsequently filed a supplement to her pro se motion.

Docket 183.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Herrboldt argues that the "unprecedented and extraordinary risk posed by the global COVID-19 pandemic," together with her health conditions, satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 183 at 1. Herrboldt requests a sentence of time served

and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. *Id.*

## I.     Administrative Exhaustion

Previously, only the Bureau of Prisons (BOP) Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Herrboldt submitted her first request for compassionate release on March 30, 2020. The warden denied her request on April 9, 2020. The 30-day period expired on May 11, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Herrboldt's motion is ripe for review on the merits.

## II.     Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Prior to Congress passing the FSA, the Sentencing

4

Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd*, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear that Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the

5

Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement. Because the First Step Act changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming that the policy statements continue to apply to compassionate release motions brought under the amended FSA, Herrboldt has failed to show that her health conditions rise to extraordinary and compelling circumstances.

Herrboldt contends that her circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 183 at 4-11. Herrboldt argues that her health conditions put her at high-risk of serious complications if she contracts COVID-19. *Id.* at 9.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. People with the following health conditions are at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), serious heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (Sept. 11, 2020). The following are considered serious heart conditions that increase the risk of severe illness from COVID-19: heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension. *Id.* The Centers for Disease Control and Prevention (CDC) also provided a list of medical conditions that *might* put a person at an increased risk of severe illness from COVID-19. *Id.* These medical conditions include asthma (moderate to severe), hypertension or high blood pressure, smoking, liver disease, Type 1 diabetes mellitus, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Herrboldt's health conditions include cardiac arrhythmia, AVNRT, and WPW. Docket 177 at 1. Herrboldt's heart conditions are not listed as serious heart conditions that increase the risk of severe illness from COVID-19. *See United States v. Cerda*, 2020 WL 4751824, at *2 (S.D.N.Y. Aug. 17, 2020) (noting arrhythmia was not listed as a serious heart condition that increases risk of severe illness from COVID-19 and finding defendant's medical conditions, which included hypertension and arrhythmia, did not justify compassionate

7

release); *United States v. Freedland*, 2020 WL 4926542, at *5 (E.D. Pa. Aug. 21, 2020) (same). Additionally, Herrboldt has not identified how her heart conditions prevent her from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances.

While Herrboldt's heart conditions may put her at a higher risk of severe illness if she contracts COVID-19, that has not been the case as of yet. *See United States v. Fry*, 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (holding that to merit compassionate release, inmate "must show more than a mere speculation of the possibility of contracting the virus."). Additionally, there is no evidence in the record to suggest she has not been able to manage her heart conditions while in the prison environment. Herrboldt is receiving medical attention and treatment for these conditions, which all appear to be controlled or monitored. *See, e.g.*, Docket 177 at 5, 6, 8-9, 20, 22-23, 28, 30, 33 (detailing evaluations, follow-up visits, and chronic care visits and listing medication for cardiac arrhythmia). "Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) (internal quotation omitted). Thus, the court finds that Herrboldt does not satisfy the criteria under U.S.S.G. § 1B1.13 comment note 1(A) or U.S.S.G. § 1B1.13 comment note 1(D).

COVID-19 has infiltrated FCI Waseca, but it has not had catastrophic effects. At the present time, there are 111 active COVID-19 cases among the inmates and staff at FCI Waseca. *See United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020) ("[T]he mere presence of COVID-19 in a

8

particular prison . . . cannot justify compassionate release—if it could, every inmate in that prison could obtain release."). Although Herrboldt is unable to practice preventative measures as effectively in custody as she would in home confinement, FCI Waseca encourages inmates to wash their hands frequently, wear facial masks, and practice social distancing when feasible. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 22, 2020). Herrboldt can do all those recommendations to some extent.

The court believes that Herrboldt's health conditions are appropriately managed at FCI Waseca, that the facility is engaged in strenuous efforts to protect inmates against the spread of COVID-19, and that it would act to treat any inmate who does contract COVID-19. Although the court in no way underestimates Herrboldt's health conditions, such ailments, coupled with the present conditions at FCI Waseca, do not establish extraordinary and compelling reasons justifying her early release.

Even if Herrboldt's medical conditions are "extraordinary and compelling reasons warrant[ing] such a reduction" under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction. Herrboldt was found responsible for distributing approximately 12,500 fentanyl pills, approximately 850 grams of fentanyl, in South Dakota. Docket 122 ¶ 15. Herrboldt's total offense level was 27, and she was in criminal history category II. *Id.* ¶¶ 30, 37. Although there was a mandatory minimum sentence of 120 months in custody, Herrboldt met the criteria set forth in 18 U.S.C.

§ 3553(f)(1)-(5), which allowed the court to sentence her below the mandatory minimum. *Id.* ¶¶ 80, 81. At sentencing, Herrboldt's guideline range was 78-97 months in custody. *Id.* ¶ 81. Taking into consideration Herrboldt's sobriety, the court sentenced Herrboldt well below her guideline range to 51 months in custody. Docket 133. Herrboldt has only served approximately 12% of her full term and approximately 14% of her statutory term. Docket 177 at 140. The original sentence was chosen with care, considering Herrboldt's and her community's needs and all of the other applicable sentencing factors. Therefore, the court finds that Herrboldt's sentence of 51 months in custody followed by 3 years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

Herrboldt has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 175) is denied.

Dated September 24, 2020.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE